IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CORY W. GOECKS,

                          Plaintiff,                          OPINION AND ORDER

        v.                                                    09-cv-351-wmc

SCOTT E. PEDLEY,

                          Defendant.

Some 18 months after Cory Goecks resigned from the Lafayette County Sheriff's Department, Goecks began a search for employment with another law enforcement agency in the area.  Pursuant to 42 U.S.C. § 1983, plaintiff Cory Goecks alleges defendant Scott Pedley, Sheriff of Lafayette County, infringed his constitutionally-protected "liberty interest" by making public, stigmatizing statements which made it virtually impossible for Goecks to find employment in his chosen field of law enforcement.  Pedley moves for summary judgment, arguing that Goecks' liberty interest is not at issue here, because the alleged defamatory statements were not incident to the end of his employment with Lafayette County.  Pedley also argues that, even if the facts give rise to a liberty interest, Goecks has failed to prove that he suffered a tangible loss of other employment opportunities as a result of the alleged defamatory statements or that the stigmatizing statements were publically disclosed.[1]

---

[1] In his opening brief, Pedley also argues that he is entitled to qualified immunity to the extent Goecks is alleging that Pedley acted in his official capacity rather than in his individual capacity.  (Def.'s Br. (dkt. #11) at 7-8.)  In response, Goecks claims his action is solely against Pedley in his individual capacity.  (Pl.'s Opp'n Br. (dkt. #22) at 38-39.)  Pedley drops any qualified immunity argument in his reply brief.

Viewing the current record in the light most favorable to plaintiff Goecks, defendant Pedley certainly seems to have been engaged in a deliberate, public campaign to block Goecks' employment in law enforcement, but that alone is not sufficient to state a cognizable liberty interest under the Fourteen Amendment. Because Pedley's alleged defamatory statements occurred long after Goecks' resignation, the statements were not made "incident to" his resignation as required by the Supreme Court in *Siegert v. Gilley*, 500 U.S. 226 (1991). As such, Goecks' claim fails as a matter of law, and the court will grant defendant's motion for summary.

UNDISPUTED FACTS[2]

Plaintiff Cory Goecks was employed with the Lafayette County Sherriff's Department as a Deputy Sherriff from December 1996 until December 26, 2005. Defendant Scott Pedley is, and was at all times material to this case, the elected Sheriff of Lafayette County.

In July 2005, Goecks ruptured his Achilles tendon in a non-work related accident. Goecks was instructed by his doctor to take time off both before and after his August 2005 surgery to repair the injury. Goecks' physician released him to light duty work in September 2005, but there were no light duty work assignments available. After exhausting his sick leave, Goecks applied for unemployment compensation benefits with

---

[2] The following facts are derived from the parties' proposed findings of fact and the record viewed in a light most favorable to the plaintiff.

2

the Wisconsin Department of Workforce Development ("DWD"), an action that would eventually lead to his resignation.

In October 2005, Goecks was informed by his Wisconsin Professional Police Association ("WPPA") agent that his position with the Lafayette County Sheriff's Department was going to be terminated unless he withdrew his unemployment claim. On October 24, 2005, Pedley called Goecks and told him that if he did not come in that morning and withdraw his claim, his employment would be terminated.  Pedley prepared a letter to DWD for Goecks' signature, withdrawing Goecks' claim.  (Declaration of James R. Scott ("Scott Decl.") (dkt. #16), Ex. 3.)  Pedley claims that the terms in the letter were negotiated by Goecks' WPPA agent, Mr. Durken.  (Def.'s Resp. to Pl.'s PFOF (dkt. #36) ¶ 13.)  Goecks signed the letter, and Pedley faxed it to the unemployment division of DWD.  In a memo to Pedley on that same day, Goecks requested a leave of absence pending release by his physician to return to work.  (*Id.*, Ex. 4.)  In a memorandum from Pedley to Goecks, also dated October 24, 2005, Pedley granted the leave of absence, but stated, "During this time, you shall not claim unemployment compensation and shall not be gainfully employed."  (*Id.*, Ex. 6.)

While the parties dispute how the claim for unemployment benefits was reinstated, the DWD issued a determination that benefits were allowed, finding that "[t]he claimant's failure to file a timely weekly claim certification for the period beginning 10/16/05 and ending 11/19/05 was due to an action by the employer which instructed, persuaded or warned the claimant not to file a claim."  (*Id.*, Ex. 5.)  Based on this determination, Goecks received unemployment benefits.

After Goecks' receipt of unemployment benefits, Pedley informed him that this was a "career-altering decision."  Based on this comment, Goecks determined that he no longer had a future with the Lafayette County Sheriff's Department.

On December 26, 2005, Goecks resigned from his position effective January 8, 2006.  In his resignation letter, Goecks stated: "My decision to leave is based on both personal and professional reasons, but please understand that I have thoroughly enjoyed my association with the Lafayette County Sheriff's Department."  At the time of his resignation, Pedley made Goecks a verbal offer to return.  Goecks claims that the verbal offer was reiterated in a chance meeting between Goecks and Pedley in October 2006 when Goecks was visiting Wisconsin.

After Goecks' resignation, Pedley drafted an "Exit Review" memorandum dated February 6, 2006, which he placed in Goecks' personnel file.  (Declaration of Lester Pines ("Pines Decl.") (dkt. #23), Ex. 6.)  In this detailed memorandum, Pedley questioned Goecks' use of sick leave time off prior to his 2005 Achilles tendon injury, recounted the unemployment compensation benefits dispute, stated that Goecks worked as a farm laborer while receiving unemployment benefits, and discussed a number of other issues arising during Goecks' employment.  Pedley concluded the memorandum by stating that:

> there appears to be significant evidence of unethical and otherwise inappropriate behavior on the part of Mr. Goecks during this time of service with the agency.  Therefore, it is my conclusion that Goecks should not be considered for re-employment in any position with this agency in the future.

(*Id.* at LM5)

4

In January 2006, Goecks moved to Texas where he was hired as a claims adjuster for Esurance, an automobile insurance company. In August 2006, he became an investigator in Esurance's special investigations unit.

Although Goecks' employment with the Lafayette County Sherriff's Department had ended, the dispute regarding Goecks' unemployment compensation benefits claims did not. In the summer of 2006, the Lafayette County Sherriff's Department and the WPPA reached an agreement covering 2005-2007. This agreement resulted in the payment of back-pay to union members, including back-pay for hours Goecks' worked for the department in 2005.

In November 2006, Pedley contacted Goecks via email and informed him that the Lafayette County Sherriff's Department intended to apply the $710.32 in back pay owed to Goecks to the amount of unemployment compensation benefits previously paid to Goecks. (Scott Decl., Ex. 10.) Pedley followed-up with an email a few days later, inquiring whether Goecks would prefer some other arrangement. Goecks responded, "No, no other arrangements." (*Id.*) Pedley sent a response email in which he stated: "I can sense from the brevity of your email response that you probably would like to receive the funds AND I have been giving this situation more thought." (*Id.* (emphasis in original).) In the same email, Pedley also withdrew his "previous verbal offer of future employment to you." (*Id.*)

After this exchange, Goecks contacted the DWD to inquire as to whether he owed any money to the Lafayette County Sherriff's Department. Goecks was informed that he did not. The DWD further advised that Goecks could file a claim for an additional

5

month that he was off of work in 2005.   Goecks subsequently filed for this additional benefit, which was awarded.  Pedley filed an appeal, which he withdrew two days before the hearing.

In addition, Pedley drafted another memorandum to Goecks' personnel file regarding "Former Employee / Cory Goecks / Additional Unemployment Compensation Claim Filing / Additional Non-Rehire Recommendation Information."  (Pines Decl., Ex. 7.)   In this February 5, 2007 memorandum, Pedley recounted the then recent issue regarding back-pay and Goecks' newly filed claim for unemployment compensation.  In light of Goecks' October 24, 2005 agreement to withdraw unemployment compensation claims, Pedley concluded that "it appears his lack of adherence to his own written agreement and the resultant dishonesty he has demonstrated is additional cause to question his integrity and further reinforces that he should never be considered for any position of trust here or anywhere else."  (*Id.* at LM2.)

In May 2007, Goecks transferred with Esurance back to Wisconsin.  Around the time of his move back to Wisconsin, Goecks began seeking part-time employment in law enforcement.  Goecks contacted several law enforcement departments, inquiring about employment opportunities.  As a result of these inquiries, Goecks claims that Pedley made stigmatizing statements to prospective employers.[3]

Though there are other examples, the crux of Goecks' allegations concern his attempt to gain part-time employment with the City of Shullsburg's Police Department,

---

[3] Several of these alleged statements are solely based on hearsay, which cannot be relied on to overcome a motion for summary judgment.  As such, the court deals solely with the non-hearsay evidence.

which is located in Lafayette County.   The complaint and summary judgment submissions are replete with allegations about the city's internal decision-making process and its relationship with the county.   For the purposes of summary judgment, the court will focus on Pedley's alleged statements to City of Shullsburg Mayor Lance McNaughton and the Chief of Police John Strause.

In late October 2007, Goecks spoke with Strause about a part-time position with his department.   On November 6, 2007, the City of Shullsburg Police Committee preliminarily approved of Goecks' hiring.   (Pines Decl., Ex. 4.)   On or around November 9, 2007, Pedley contacted McNaughton regarding Goecks' potential hiring, specifically mentioning some radio equipment Goecks took when he left the department's employment.   Although the parties dispute the exact contents of the conversation, McNaughton testified that Pedley told him that "he would not allow Officer Goecks into the jail if in fact he were to bring a prisoner to Darlington in the course of his duties." (Pines Decl., Ex. 1 (Dep. of Lance McNaughton) at 19.)   Based on this conversation, McNaughton was concerned that Goecks' hiring would create a problem between the City of Shullsburg and the Lafayette County Sheriff's Department.

On November 30, 2007, Strause met with Pedley.   In that meeting, according to Strause (which Pedley disputes), Pedley told Strause that hiring Goecks would be a huge mistake because Goecks was a thief, abused sick days, and could not be trusted.   Pedley also told Strause that he would not allow Goecks in the county jail past where a civilian could go.

Goecks was not hired by the City of Shullsburg's Police Department, and has no prospects of obtaining other employment in law enforcement in Wisconsin. At some point, Goecks returned to Texas. Goecks has applied for law enforcement positions in Texas as well, listing Lafayette County Sheriff's Department as a former employer on employment applications. To date, he has also been unsuccessful in obtaining a position in law enforcement in Texas.[4]

OPINION

To state a claim for deprivation of occupational liberty, Goecks must show that "(1) he was stigmatized by the defendant's conduct; (2) the stigmatizing information was publically disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991); *see also Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000). As a threshold matter, the alleged stigmatizing statements must also be "uttered incident to the termination." *Siegert v. Gilley*, 500 U.S. 226, 234 (1991); *see also Paul v. Davis*, 414 U.S. 693, 710 (1976) (required that "the defamation had to occur in the course of the termination of employment").

Plaintiff Goecks certainly appears to have put forward sufficient facts to proceed past summary judgment on his claims that (1) Pedley's alleged statements were stigmatizing in nature; (2) Pedley publically disclosed this stigmatizing information; and

---

[4] In defendant's reply brief, defendant requests that the declaration of Joseph H. Durkin be stricken, on the basis that he was never disclosed as a fact or expert witness under Fed. R. Civ. Proc. 26(a). Defendant's evidentiary objection is denied as moot.

(3) Goecks suffered a tangible loss of other employment opportunities, namely a part-time position with the City of Shullsburg, because of Pedley's public statements  The alleged actionable statements, however, were made over 18 months after Goecks' resignation and, therefore, were not made "incident to" or "in the course of" Goecks' resignation.  For this reason, the court will grant Pedley's motion for summary judgment.

A stigmatizing statement must "occur at or near the time of [the plaintiff's] termination since that is when the liberty interest arises, if at all." *Hadley v. County of Du Page*, 715 F.2d 1238, 1246 (7th Cir. 1983).  A statement "might be defamatory, [but] defamation alone does not give rise to a liberty interest protected by the Fourteenth Amendment." *Id.* at 1247 (citing *Paul*, 424 U.S. at 710; *Colaizzi v. Walker*, 542 F.2d 969, 973 (7th Cir. 1976)).

Defendant's motion for summary judgment centers on the United States Supreme Court's *Siegert* decision, a case factually and legally similar to that at hand, and for which the plaintiff offers no principled, distinguishing grounds.  In *Siegert*, a psychologist with St. Elizabeths Hospital, a federal government hospital in Washington, D.C., was informed that his employment was going to be terminated "based upon his inability to report for duty in a dependable and reliable manner, his failure to comply with supervisory directives, and cumulative charges of absence without approved leave."  500 U.S. at 228.  Based on this, Siegert agreed to resign so as to avoid the damage to his reputation caused by a termination.  *Id.*  Siegert began working as a clinical psychologist at a United States Army Hospital in Germany.  *Id.*  As such, he was required to be "credentialed."  *Id.*  Siegert's supervisor at St. Elizabeths was asked to provide

9

information for credentialing purposes.  In response, his supervisor wrote that he "consider[ed] Dr. Siegert to be both inept and unethical, perhaps the least trustworthy individual I have supervised in my thirteen years at [St. Elizabeths]."  *Id.*

Recognizing that "injury to reputation by itself is not a 'liberty' interest protected under the Fourteenth Amendment," the Court rejected Siegert's claim on the basis that "[t]he alleged defamation was not uttered incident to the termination of Siegert's employment by the hospital, since he voluntarily resigned from his position at the hospital, and the letter was written several weeks later."  *Id.* at 233-34.  The Court recognized that the letter would "undoubtedly damage the reputation of one in his position, and impair his future employment prospects."  *Id.* at 234.  But the court held that while this harm to reputation may be recoverable under state tort law, it does not give rise to a constitutional claim.  *Id.* at 233-34.[5]

In a pre-*Siegert* opinion, the Seventh Circuit similarly rejected alleged stigmatizing statements made months after the plaintiffs' termination.  *Hadley v. County of Du Page*,

---

[5] It is, at best, difficult to understand the Court's tethering the finding of a threshold "liberty interest" based on lost future opportunities to statements made at the time of an unchallenged, past job termination.  Indeed, Justice Marshall, in his dissenting opinion in *Siegert*, takes issue with the majority's reliance on *Paul v. Davis* to find "that reputational injury deprives a person of liberty only when combined with loss of *present* employment, not *future* employment."  500 U.S. at 241 (Marshall, J. dissenting) (emphasis in original); *see also* 1 Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 3.05[C] at 3-79 (4th ed. 2010) ("The Court did not explain why the loss of prospective employment did not satisfy the 'plus.'")  Recognizing the "difficulty" of this issue, Justice Kennedy, in a separate concurrence, avoids the question altogether, instead opting to decide the case on plaintiff's failure to plead facts sufficient to establish malice and thereby avoid the bar of qualified immunity.  Perhaps the holding that stigmatizing statements must be made incident to termination needs to be revisited, but this court is bound by it until then.  *See Levine v. Heffernan*, 846 F.2d 457, 561 (7th Cir. 1988) ("only the Supreme Court may overrule one of its own precedents").

715 F.2d 1238 (7th Cir. 1983). The plaintiff in *Hadley* was terminated from his position as the superintendent of public works for the County of Du Page because of alleged mismanagement. *Id.* at 1239. Almost two years after his termination, the Du Page County Board Chairman Jack Knuepfer (who was one of the defendants) was quoted in a newspaper article as stating that Hadley was terminated because of his "record of management, or mismanagement," and specifically that "the falsification of reports submitted to the Illinois Environmental Protection Agency (EPA) [were] evidence of mismanagement." *Id.* at 1246. Hadley contended that this newspaper article constituted a stigmatizing statement because it alluded to criminal activity. *Id.*

The Seventh Circuit rejected the plaintiff's claim, holding that the statements in the newspaper article were not made incident to Hadley's termination:

> We hold that Knuepfer's statement, almost two years after Hadley's termination, does not give rise to a liberty interest since the requisite nexus between the allegedly stigmatizing statement and the date of Hadley's dismissal is nonexistent, i.e., it was too remote in time to meet the stigma plus test.

*Id.* at 1247. Similarly, in *McMath v. City of Gary, Indiana*, 976 F.2d 1026, 1030-32 (7th Cir. 1992), the Seventh Circuit distinguished the defamatory statement in *Siegert* "not made incident to the plaintiff's loss of current employment" which only "affected the plaintiff's opportunities for future government employment" from the stigmatizing public statements about McMath "made at the time of his discharge."

Here, Goecks returned to Wisconsin in May 2007 and the core, alleged defamatory statements to City of Shullsburg officials did not occur until November 2007 -- almost two years after his resignation. Indeed, Goecks alleges that Pedley made no

11

public, stigmatizing statements affecting his search for part-time law enforcement positions until the summer of 2007, over 18 months after he resigned his position with the Lafayette County Sherriff's Department in December 2005.[6]

In an attempt to save his claim, Goecks offers two possible, alternative bases for his constitutional claims, neither of which are persuasive.  First, Goecks points to cases recognizing a "liberty interest" where the plaintiff was never employed by the defendant. (Pl.'s Opp'n Br. (dkt #22) at 32 (citing *DuPuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005), and *Boyd v. Owen*, 481 F.3d 520 (7th Cir. 2007)).  In *DuPuy,* a state agency's findings as to child abuse and neglect allegations against a prospective employee -- publically available and required by law to be reviewed by employers in the child care field -- placed an "almost insuperable[] impediment on obtaining a position in the entire field of child care."  397 F.3d at 511.  *See also Boyd*, 481 F.3d at 523 (relying on *DuPuy* to define the contours of the constitutional claim at stake on similar facts involving the field of law enforcement).  The *DuPuy* and *Boyd* decisions do not stand for a broad acceptance of liberty interests brought against non-employers (or former employers), but rather are limited to "unique circumstances" involving statutorily-mandated, universal review of virtually disqualifying information maintained by the government itself.  *See DuPuy*, 397 F.3d at 511.

---

[6] Like Siegert, Goecks resigned his position as an alternative to being terminated, which may provide a separate basis for finding an absence of a liberty interest.  *See Siegert*, 500 U.S. at 234 ("The alleged defamation was not uttered incident to the termination of Siegert's employment by the hospital, since he voluntarily resigned from his position at the hospital, and the letter was written several weeks later.") (emphasis added).  *See also Koch v. Stanard*, 962 F.2d 605, 606-07 (7th Cir. 1992) (noting that *Siegert* calls into question earlier cases where termination of employment was not required).

Second, Goecks argues that Pedley's "failure to rehire" him upon his return to Wisconsin provides a separate basis for a viable claim. (Pl.'s Opp'n Br. at 32.) While a failure to rehire may form the basis of a tangible loss -- in other words, the requirement of a tangible loss of "other employment" requirement may be met by a failure to rehire -- the alleged defamatory public statements must still be made incident to termination of employment. *See, e.g.*, *Colaizzi v. Walker*, 542 F.2d 969, 973 (7th Cir. 1976) (holding that a press release containing stigmatizing language issued at the time of discharge, along with a failure to rehire, formed a basis for a claim of deprivation of liberty without due process). So, again the lack of a temporal nexus between Goecks' resignation and Pedley's alleged stigmatizing statements precludes Goecks' constitutional claim. Even if the relevant temporal nexus were between refusal to rehire and the statements, the alleged stigmatizing public statements here occurred in May 2007, well <u>after</u> Pedley communicated his decision not to rehire Goecks in November 2006.

Moreover, Goecks never actually reapplied for a position with the Lafayette County Sheriff's Department, and therefore Pedley's private email "revoking" an open offer to return never really amounted to a failure to rehire. Indeed, Pedley's revocation of an open offer in a November 2006 email exchange with Goecks occurred entirely outside of the context of any hiring decision -- Goecks was still in Texas at that time and it was several months before Goecks returned to Wisconsin in May 2007. In other words, by revoking the offer, Goecks' legal status was not altered. *Paul*, 424 U.S. at 708-09 (holding that an "alteration of legal status" coupled with injury resulting from stigmatizing statements gives rise to a claim).

13

Pedley's alleged, oral statements certainly appear to have "crossed the line from mere defamation," because at least some "impugn[ed Goecks'] moral character." *Hedrich v. Board of Regents of Univ. of Wis. Sys.*, 274 F.3d 1174, 1184 (7th Cir. 2001).   For example, Pedley told John Strause, the Chief of Police for the City of Shullsburg, that Goecks was a thief, that he abused his sick leave, and that he could not be trusted.  (Ex. A to Declaration of John E. Strause  ("Strause Decl.") (dkt. #24) at 7.)[7]  .

Unfortunately for Goecks, the only stigmatizing statements that meet the "incident to termination" threshold are those contained in Goecks' private personnel file. A damaging report sitting in a personnel file waiting for its release is not actionable.  *See Franklin v. City of Evanston*, 384 F.3d 838 (7th Cir. 2004) (holding that the simple inclusion of damaging information in a public employee's personnel file does not satisfy the publication requirement).[8]  *See also McMath*, 976 F.2d at 1035 ("ticking time bomb[s]" in personnel files are insufficient to meet the publication requirement)(citation omitted).   Here, there is no allegation that Pedley's private memos placed in Goecks' personnel file, or even his private email exchange with Goecks revoking an open offer of employment were made public.  As a result, Goecks' constitutional claim is a non-starter

---

[7] Pedley objects to Goecks' reliance on Exhibit A to Strause's declaration because it is an "unsworn document."  (*See, e.g.*, Def.'s Resp. to Pl.'s PFOF (dkt. #26) ¶ 58.)  This objection has no merit since the exhibit -- a report Strause drafted and maintained in Strause's records -- is attached to a Strause's sworn declaration.  Moreover, Straus's recounting of his conversation with Pedley is admissible under Fed. R. Evid. 801(d)(2)(A) as an admission of a party-opponent.

[8] Even if Pedley's statements buried in his personnel file incident to his resignation were at issue and actionable, there would still be a question of Pedley's entitlement to good faith immunity in entering private observation in a personnel file as part of his official duties.

for lack of temporal nexus, though the alleged facts may give rise to a defamation claim under state law.

ORDER

IT IS ORDERED that:

1)  defendant Scott E. Pedley's motion for summary judgment (dkt. #10) is GRANTED;

2)  defendant's motion to strike the declaration of Joseph H. Durkin is denied as moot; and

3)  the Clerk of Court enter final judgment for defendant and close this case.

Entered this 9th day of August, 2010.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge